**HIDEN, ROTT & OERTLE, LLP**
A Limited Liability Partnership
Including Professional Corporations
MICHAEL IAN ROTT, ESQ.   (C.S.B. 169468)
ERIC M. OVERHOLT, ESQ.   (C.S.B. 248762)
2635 Camino del Rio South, Suite 306
San Diego, California 92108
Telephone: (619) 296-5884
Facsimile:  (619) 296-5171

*Attorneys for LILIA PERKINS and the Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIA PERKINS, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>PHILIPS ORAL HEALTHCARE, INC., a Washington Corporation; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, a Delaware Corporation; and DOES 1 through 20, inclusive.<br><br>        Defendants. | CASE NO.: 12-cv-1414H BGS<br><br>Judge: Hon. Marilyn L. Huff<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ORDER AWARDING ATTORNEY'S FEES, REIMBURSEMENT OF COSTS AND SERVICE AWARD TO THE CLASS REPRESENTATIVE**<br><br>Hearing Date: November 4, 2013<br>Hearing Time: 10:30 a.m.<br>Courtroom: 15A |

///

///

///

///

///

///

1

# TABLE OF CONTENTS

NOTICE OF MOTION……………………………………………………… 2

MEMORANDUM…………………………………………………………….. 2

I.      INTRODUCTION…………………………………………………… 2

II.     OVERVIEW OF ACTION AND STATEMENT OF RELEVANT
        FACTS………………………………………………………………… 4

    A. Plaintiff's Pre-suit Investigation & Pre-suit Demand Letters…………. 4

    B. Phillips' Motion to Dismiss…………………………………………… 4

    C. Non-Coupon benefits to the Class prior to the ENE………………… 5

    D. Settlement
    Negotiations…………………………………………………………… 5

III.    THE PROPOSED SETTLEMENT BENEFITS OBTAINED……….. 6

IV.     THIS COURT SHOULD GRANT CLASS COUNSEL'S APPLICATION
        FOR ATTORNEY'S FEES AND REIMBURSEMENT OF COSTS
        INCURRED……………………… 7

    A. The Standard for Approval of Attorneys' Fees in a Class Action……. 7

    B. The Court's Role in Review of Separately Negotiated Fees………… 8

    C. As the Complaint Contains California Claims, California Law Controls the
    Issue of Attorneys' Fees and Costs……………………… 10

    D. The Court Should Grant Class Counsel's Fee Application, Since it Represents
    a Reasonable Lodestar and Multiplier…………………… 13

        1. The novelty and difficulty of the questions involved, and the skill
        displayed in presenting them………………………….. 15

        2. The extent to which the nature of the litigation precluded other
        employment by the attorneys……………………………….. 16

        3. The contingent nature of the fee award……………………… 16

        4. The results obtained by Class Counsel……………………….. 17

        5. Continuing obligations of Class Counsel……………………... 21

///

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 · FAX (619) 296-5171

i

6. The multiplier is within the range of reason and in the mid-level for cases of this nature......................................... 22

E. The Court Should Also Award Plaintiffs' Counsel Their Reasonable Costs And Expenses ............................................................... 23

F. The Class Representatives' Incentives Award is Appropriate and Reasonable 23

**V.   NO OBJECTIONS FROM CLASS MEMBERS TO THE FEE REQUEST IS AN IMPORTANT FACTOR**.............................. 24

**VI.   CONCLUSION** 24

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5888 · FAX (619) 296-5171

# TABLE OF AUTHORITIES

**CASE LAW**

| | |
|---|---|
| *Beasley v. Wells Fargo Bank,*<br>235 Cal. App. 3d 1407 | 16 |
| *Bihun v. AT&T Info. Sys., Inc.,*<br>13 Cal. App. 4th 976 | 13 |
| *Boeing Co. v. Van Gemert,*<br>444 U.S. 472 | 17 |
| *Buccellato v. AT&T Operations, Inc.,*<br>No. C10–00463–LHK, 2011 WL 4526673 (N.D. Cal. June 30, 2011) | 12 |
| *Cook v. Niedert,*<br>142 F.3d 1004 | 23 |
| *Dunk v. Ford Motor Co.,*<br>48 Cal. App. 4th 1794 | 8 |
| *Diamond v. John Martin Co.,*<br>753 F.2d 1465 | 10 |
| *Drucker v. O'Brien's Moving & Storage, Inc.,*<br>963 F.2d 1171 | |
| *Feder v. Frank (In re HP Inkjet Printer Litig.),*<br>716 F.3d 1173 | 11,<br>12 |
| *Glass v. UBS Fin. Servs., Inc.,*<br>No. C06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 1997) | 17 |
| *Grannan v. Alliant Law Group, PC,*<br>No. C10–02803 HRL, 2012 WL 216522, at *10 (N.D. Cal. Jan. 24, 2012) | 16 |
| *Hanlon v. Chrysler Corp.,*<br>150 F.3d 1011 | 3,11 |
| *In re Bluetooth Headset Prods. Liab. Litig.,*<br>654 F.3d 935 | 8,10 |
| *In re Cadence Design Sys., Inc. Sec. & Derivative Litig.,*<br>C-08-4966 SC, 2012 WL 1414092 (N.D. Cal. Apr. 23, 2012) | 22 |
| *In re Calif. Indirect Purchaser X-Ray Film Antitrust Litig.,*<br>No. 960886, 1998 WL 1031494 (Cal. Super. Ct. Oct. 22, 1998) | 22 |
| *In re In re Charles Schwab Corp. Sec. Litig Charles Schwab Corp. Sec. Litig.,*<br>No. C 08–01510 WHA, 2011 WL 1481424,  (N.D. Cal. Apr. 19, 2011) | 22 |

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

*In re Consumer Privacy Cases*,
175 Cal. App. 4th 545 (Cal. App. 1st Dist. 2009). ... *11*

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL
No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) ... *9*

*In re Nuvelo, Inc.* Sec. Litig.,
No. C 07–04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ... *12*

*In re M.D.C. Holdings Sec. Litig.*,
No. CV 89-0090 E(M), 1990 U.S. Dist. LEXIS 15488, (S.D. Cal. Aug. 30, 1990) ... *9*

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ... *24*

*In re Rite Aid Sec. Litig.*,
396 F.3d 294, 305 (3rd Cir. 2005) ... *24*

*In re SmithKline Beckman Corp. Sec. Litig.*,
751 F. Supp. 525 (E.D. Pa. 1990)). ... *23*

*In re Trilogy Sec. Litig.*,
C-84-20617(A) (N.D. Cal. Mar. 14, 1986) ... *22*

*In re U.S. Bancorp Litig.*,
291 F.3d 1035, 1038 (8th Cir. 2002 ... *23*

*In re Veritas Software Corp. Sec. Litig.*,
No. C-03-0283 MMC, 2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) ... *22*

*In re Vitamin Cases*,
110 Cal. App. 4th 1041, 1056 (Cal. App. 1st Dist. 2003) ... *15*

*In re Washington Public Power Supply System Securities Litigation*,
19 F.3d 1291, 1297 (9th Cir. 1994) ... *7*

*Johnson v. Ga. Hwy. Express, Inc.*,
488 F.2d 714, 720 (5th Cir. 1974) ... *9*

*Jacquette v. Black Hawk County*,
710 F.2d 455, 460 (8th Cir. 1983) ... *12*

*Kern Oil & Refining Co. v. Tenneco Oil Co.*,
792 F.2d 1380, 1388 (9th Cir. 1986) ... *10*

*Ketchum v. Moses*,
24 Cal. 4th 1122, 1132 (2001) ... *13,16*

*Lealao v. Beneficial Cal., Inc.*,
82 Cal. App. 4th 19 (Cal. App. 1st Dist. 2000) ... *11,13, 21*

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
222 F.3d 1142 (9th Cir. 2000) ... *6*

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

*Lundell v. Dell, Inc.*,
No. CIVA C05-3970 JWRS, 2006 WL 3507938, at *4 (N.D. Cal. Dec. 5, 2006)  —  *17*

*Malchman v. Davis*,
761 F.2d 893, 905 n.5 (2d Cir. 1985)  —  *8*

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002)  —  *24*

*Mangold v. Cal. Pub. Utilities Comm'n*,
67 F.3d 1470, 1479 (9th Cir. 1995)  —  *10*

*McBean v. City of New York*,
233 F.R.D. 377, 392 (S.D.N.Y. 2006)  —  *10*

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)  —  *9*

*Olson v. Auto Club of S. Cal.*,
42 Cal. 4th 1142 (2008)  —  *16*

*Serrano v. Unruh*,
32 Cal. 3d 621 (1982)  —  *11,13, 15,16*

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)  —  *6,8,23*

*Stratton v. XTO Energy Inc.*,
No. 02-10-00482-CV, 2012 Tex. App. LEXIS 1089, at *18-*19 (Tex. Ct. App. Feb. 9, 2012)  —  *12*

*Thayer v. Wells Fargo Bank, N.A.*,
92 Cal. App. 4th 819 (Cal. App. 1st Dist. 2001)  —  *13,14, 17*

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)  —  *24*

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995)  —  *22*

*Vizcaino v. Microsoft*, 290 F.3d 1043 (9th Cir. 2002)  —  *10,22*

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)  —  *17*

*Wilson v. Bank of America Nat'l Trust & Sav. Ass'n*,
No. 643872 (Cal. Super. Ct. Aug. 16, 1982)  —  *22*

*Wing v. Asarco, Inc.*,
114 F.3d 986, 988-89 (9th Cir. 1997)  —  *8*

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
556 F.3d 815, 827 (9th Cir. 2009)  —  *12*

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

| | |
|---|---|
| *Young v. Polo Retail, LLC*,<br>No. C-02-4546 VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) | *17* |
| **OTHER SOURCES** | |
| *Report of the Third Circuit Task Force, Court Awarded Attorney Fee, 108 F.R.D. 237, 267 (3d Cir. 1985)* | *8* |
| *Herbert B. Newberg & Alba Conte*, 4 Newberg on Class Actions §14:6 (4th ed. 2002) | *18* |
| **FEDERAL STATUTES** | |
| *Fed. R. Civ. P. 23(h)* | *7* |
| 28 U.S.C. §§ 1712 (b)(1) | *11, 14* |
| 28 U.S.C. §§ 1712 (b)(2) | *11* |
| 28 U.S.C. § 1712(a) | *18* |
| 28 U.S.C. §§ 1712(c)(2) | *11, 1418* |
| 28 U.S.C. § 1712(b) | *18* |

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

HIDEN, ROTT & OERTLE, LLP<br>2635 Camino Del Rio South, Suite 306<br>San Diego, California 92108<br>TEL (619) 296-5884   FAX (619) 296-5171

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 4, 2013, at 10:30 a.m. before the Honorable Marilyn L. Huff in Courtroom 15A, 15th Floor of the United States District Court for the Southern District of California, located at 333 West Broadway, San Diego, California 92101, Plaintiff Lilia Perkins will and hereby does move for an order (i) awarding attorney's fees, reimbursement of costs and service award to the class representative.

Plaintiff's motion is based on this notice; the accompanying Memorandum of Points and Authorities, the motion for final approval of class action settlement, the Declaration of Michael I. Rott and all attachments thereto (including the Settlement Agreement), and Proposed Order Granting Final Approval of Class Settlement, and all other papers filed and proceedings had in this action.

Dated: October 7, 2013                     **HIDEN, ROTT & OERTLE, LLP**

By:     s/ERIC M. OVERHOLT_____
        Michael Ian Rott, Esq.
        Eric M. Overholt, Esq.
        *Attorneys for Plaintiff and the Class*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Court-appointed Class Counsel respectfully submits this Memorandum of Points and Authorities in support of their motion for an order awarding class counsel attorney's fees and for reimbursement of expenses in the amount $114,500.00   ($485.50 of which is intended to reimburse plaintiffs' counsel for their out-of-pocket expenses). Philips has agreed not to oppose payment of fees and costs up to this amount.  Counsel also seeks a stipend in the amount of $750 for the representative plaintiff in recognition of her service to the Class.

The amount set forth above and in the Settlement Agreement, as this Court is aware, is to be paid directly by Defendants Philips Oral Healthcare, Inc., Philips Electronics North America Corporation ("Philips"or "Defendant") and independent of the Class recovery and benefits

2

provided to the Class in the Settlement Agreement. As set forth in the record, and detailed in the accompanying declarations to this motion, the fees and cost reimbursement does not reduce any of the proposed Settlement benefits provided to the Class, but in fact was the product of arm's-length negotiations between Class Counsel and Philips, with the assistance of Magistrate Hon. Judge Bernard G. Skomal, after the parties reached an agreement on the substantive terms of the proposed Settlement.

As the record before this Court establishes, the Class Counsel has devoted almost one and a half years to the litigation and class wide resolution of this action. Only after engaging in extensive and rigorous investigation of Philips' AirFloss technology, review of extensive research, consultation with dentists and after consideration of the relevant law, was Class Counsel in this case able to submit to this Court their proposed Settlement. Through this investigation and research, along with arm's-length negotiations, under the auspices of the Hon. Bernard G. Skomal Plaintiffs and their counsel obtained a proposed Settlement designed to ensure that the Class members who purchased AirFloss would be able to obtain vouchers of $33.00, $23.00, or $7.00. See Declaration of Michael Ian Rott In Support of Final Approval of Class Action Settlement and In Support of Award of Attorney's Fees, Reimbursement of Costs and Service Award to the Class Representative ("Rott Decl.") at ¶ 6.

In addition, as a direct result of this litigation, Class Counsel was able to procure non-monetary benefits to the Class by causing Philips to change the way that the AirFloss is advertised. This change happened early on in the litigation. Philips reached out to Class Counsel to inquire what kind of changes counsel would like to see on the packaging. *See Id.* at ¶ 16 . Shortly thereafter, Phillips changed one of the most offending claims on the packaging by changing the prominently displayed "An easier way to floss" to "Don't Floss? Then AirFloss". Further, post-settlement, Philips submitted additional changes to the packaging to Class Counsel and Class Counsel reviewed additional changes to the packaging made by Philips. These changes removed the offending language that Plaintiff complained of in their CLRA letter and in the Complaint and First Amended Complaint. See Rott Decl. at ¶ 4 and Ex. 6 ; and Dkt # 1,5.

Pursuant to Rule 23 jurisprudence, Ninth Circuit precedent, and the rulings in the

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

3

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

Southern District of California, Class Counsel respectfully seeks an award of attorneys' fees pursuant to a "lodestar" analysis under California law. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (noting that lodestar method is used more often in cases where "there is no way to gauge the net value of the settlement or any percentage thereof."). This amount requested will be based on the non-coupon benefit received by the class. As Class Counsel demonstrates, the modest "multiplier" on Plaintiffs' Counsel's fee, which Philips has agreed not to oppose, is reasonable, well supported by the facts and the law and should be granted by this Court.

## II. OVERVIEW OF ACTION AND STATEMENT OF RELEVANT FACTS

### 1. Plaintiff's Pre-suit Investigation & Pre-suit Demand Letters

In the course of investigating the claims against Philips, Plaintiff's counsel reviewed numerous complaints on the internet about the efficacy of the product. Rott Decl. ¶ 2. Plaintiff's counsel also interviewed other consumers who had used the product and were dissatisfied with the results. *Id.* The complaints on the internet and complaints of other individuals mirrored Plaintiff's complaints and frustrations.

To determine if the AirFloss really did not function as a replacement to floss, Plaintiff's counsel conducted their own research into the American Dental Association standards for floss. To better substantiate their own research regarding whether an oral irrigator is the same as traditional floss and to begin the long process of preparing a case, Plaintiff's counsel enlisted the help dentists who answered our questions and provided guidance. (*Id at ¶. 3.*)

Plaintiff sent, with the assistance of counsel, a pre-lawsuit letter pursuant to the California Consumer Legal Remedies Act outlining all of the complaints that she had regarding the AirFloss and the way that it was advertised on the packaging and on the Philips website. In response to that letter, Philips hired counsel and denied Plaintiff's allegations.

### 2. Phillips' Motion to Dismiss

On October 31, 2012, Philips filed a Motion to Dismiss the FAC. *See* Dkt. 6. Philips argued that the Court should dismiss Plaintiff's First Amended Complaint in its entirety. After the issues were fully briefed, the Court issued an Order granting in part and denying in part

4

Philips' Motion.  The Court dismissed the express warranty claim and one of the three CLRA claims, but allowed the fraud-based claims, UCL claims, the express warranty claims and the remaining CLRA claims to go forward.  The Court denied Philips' motion to dismiss any of the other claims.

### 3.  Non-Coupon benefits to the Class prior to the ENE

Within months of Plaintiff filing her complaint, Philips' counsel reached out to Class Counsel to inquire what kind of changes that Class Counsel would like to see on the packaging. Shortly thereafter, Phillips changed on of the most offending claims on the packaging by changing the prominently displayed "An easier way to floss" to "Don't Floss? Then AirFloss". *See* Rott Decl. at ¶ 16 and Exhibits 3 & 4. Further, post-settlement Philips submitted additional changes to the packaging to Class Counsel and Class Counsel reviewed additional changes to the packaging made by Philips.  Such additional changes include the removal of language that Plaintiff contended was false and misleading, such claims on the packaging that the AirFloss is "An easier way to Floss", and that one can "Floss your whole mouth in 60 seconds".  *See Id. at* ¶ 17 and exhibit 3 & 5.

### 4.  Settlement Negotiations

Plaintiff and her counsel appeared at an Early Neutral Evaluation ("ENE") conference with the Honorable Judge Bernard G. Skomal on April 10, 2013.  Prior to the ENE conference, Plaintiff's counsel and counsel for Philips had some initial discussions about Plaintiff's claims and the possibility of settlement.   At the ENE, Judge Skomal assisted the parties in communicating the perceived strengths and weaknesses with the parties' respective positions.  By the end of the ENE, the parties had a preliminary agreement on the amount of and conditions for the vouchers for the Class Members.  Over the course of the next month Plaintiff's counsel and Philips' counsel engaged in continued negotiations about notice procedures and, ultimately, Plaintiff's attorney's fees and costs.

Based on these negotiations and our firm's own investigation, the settlement is in the best interests of the putative class members.  Plaintiff's counsel specifically balanced the terms of the proposed settlement, including both the settlement amount and the benefits conferred to class

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

1    members against the probability of liability, the risk of non- certification, the risks and expense of

2    trial as well as concerns about the likelihood of numerous appellate issues.   Counsel also

3    considered the timing of recovery, delays in receipt of funds due to trial and potential appeal and

4    similar issues. (Id. at ¶ 11)

5         As the record also establishes, only after the parties reached agreement on the substantive

6    terms of the proposed Settlement did they then turn to the issue of payment of attorneys' fees and

7    reimbursement of costs. Instead of "agreeing to disagree," the parties, following well established

8    law of this Circuit, were able reach an agreement that Philips would not oppose and would

9    separately pay to Class Counsel fees and costs not to exceed $114,500, subject to Court approval.

10   *See Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) ("Since the proper amount of fees is

11   often open to dispute parties are compromising to avoid litigation, the court need not inquire into

12   the reasonableness of the fees at the high end with precisely the same level of scrutiny as when

13   the fee amount is litigated*."); Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142 (9th Cir.

14   2000) (affirming award of fees and expenses, where defendant had agreed not to oppose request

15   for fees and expenses up to a negotiated ceiling and to be paid separately from class settlement

16   benefits).

17   **III. THE PROPOSED SETTLEMENT BENEFITS OBTAINED**

18        A more detailed description of the benefits obtained through the proposed Settlement is

19   included in Plaintiffs' Motion for Final Approval of the Settlement and in the Declaration

20   Michael I. Rott, in Support of Final Approval of Settlement and in Support of Application for

21   Fees and Reimbursement of Expenses (the "Rott Decl."). For purposes of this motion, without

22   detailing all aspects of the proposed Settlement, the benefits provided to Class members include:

23        i.     $33.00 to class members who purchased a two-pack and submit proof of purchase

24        ii.    $23.00 to class members who purchased a single-pack and submit proof of

25               purchase

26        iii.   $7.00 to class members that submit a claim form, but do not submit proof of

27               purchase

28

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL. (619) 296-5884 · FAX (619) 296-5171

6

In addition, class counsel has conferred a non-monetary benefit to the class and the general public by causing Philips to change the way that they Market the AirFloss. In Plaintiff's CLRA letter and in Plaintiff's Complaint, Plaintiff demanded that Philips discontinue the use of marketing their product as "An easier way to Floss", "Floss your whole mouth in 60 seconds". And, "AirFloss takes the hassle out of flossing so you can get a deep clean every day". See, generally, FAC (Dkt #5) and Rott Decl. Ex. 6. Shortly after litigation began, Philips changed their advertising on their packaging from "An easier way to floss" to "Don't Floss? Then AirFloss" and removed other references so that one would not likely confuse AirFloss as a replacement for flossing. *See* Rott Decl. at ¶ 16 and Exhibit 3 & 4. In addition, during the final phases of negotiation for settlement, Philips provided confidential documents indicating additional changes to the product packaging. The changes to the packaging further removed offending language complained of by Plaintiffs to the extent that they removed language that longer improperly indicated that the AirFloss is designed to be a replacement for traditional floss. The language that Plaintiff sought to remove because it was misleading has been removed and is no longer on the AirFloss packaging. *Id. at* ¶ 17 and Rott Decl. Exhibit 5.

Having conferred these and other benefits (e.g., Philips' payment of notice and administration of the proposed Settlement) on the Class, as set forth in the Settlement Agreement, Counsel now seeks an award of attorneys' fees and reimbursement of expenses in the amount that Philips agreed not to oppose as part of the overall resolution of this action.

## IV. THIS COURT SHOULD GRANT CLASS COUNSEL'S APPLICATION FOR ATTORNEY'S FEES AND REIMBURESMENT OF COSTS INCURRED

### A. The Standard for Approval of Attorneys' Fees in a Class Action.

Federal Rule of Civil Procedure 23(h) provides that in a class action, "the court may award reasonable attorney's fees and nontaxable costs authorized by law or by agreement of the parties*." In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1297 (9th Cir. 1994); *Drucker v. O'Brien's Moving & Storage, Inc.*, 963 F.2d 1171, 1172 (9th Cir. 1992). In a case in which plaintiffs have obtained a benefit for the class, and the parties separately negotiate the fees for class counsel, the District Court must consider whether the fees requested

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

1   are "reasonable" and, as long as they are not so unreasonably high to appear to provide a

2   defendant with other concessions, the Court should approve of the agreed upon amount. *Staton*,

3   327 F.3d at 966; *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 954 (9th Cir.

4   2011).

5   **B. The Court's Role in Review of Separately Negotiated Fees.**

6   An important factor, and perhaps the most important in connection with the present

7   application, is the fact that the attorneys' fees issue was negotiated by the parties. As many courts

8   have recognized, separately negotiated attorneys' fee provisions, such as those negotiated by the

9   parties in this action, are accepted as appropriate and are encouraged in consumer class actions.

10  *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801 (Cal. App. 4th Dist. 1996). The court

11  should accord great weight to the parties' agreement on what constitutes a reasonable fee. *See*

12  *Wing v. Asarco, Inc.*, 114 F.3d 986, 988-89 (9th Cir. 1997); Dunk, 48 Cal. App. 4th at 1801.

13  In settling a class action it is proper for the parties to negotiate the amount of attorneys'

14  fees separately from negotiating the benefits to be given to the class. *See generally, Report of the*

15  *Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 267 (3d Cir. 1985).

16  The task force approved of defendants making a settlement offer conditioned on a later,

17  satisfactory resolution of the issue of attorneys' fees. "This type of offer, assuming the fee

18  question is pursued in good faith, usefully separates the issues of settlement of the merits and

19  resolution of the fees in a way that should minimize the defendant's reluctance to negotiate." *Id.*

20  at 269. Agreeing on the maximum amount of a fee request that defendant will pay separately and

21  above the benefits made available to the class, after agreeing on those class benefits, similarly

22  minimizes the danger that the interests of the class will be compromised to increase the fee

23  payable to plaintiffs' counsel, and creates the attraction of certainty for defendants by establishing

24  precisely the limit of their liability. *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) .")

25  ("[W]here . . . the amount of the fees is important to the party paying them, as well as to the

26  attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an

27  application for fees up to a point is essential to completion of the settlement, because the

28  defendants want to know their total maximum exposure and the plaintiffs do not want to be

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

8

1   sandbagged. It is difficult to see how this could be left entirely to the court for determination after

2   the settlement.) *See also Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974)

3   ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to

4   understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

5           Here, the Court's role in overseeing the fee application in the present context is

6   substantially different from that in the traditional "common fund" case, in which the awarded fee

7   is subtracted from the total amount of money and/or benefits made available to the class, thereby

8   diminishing those benefits. The requested fees and expenses do not affect the recovery by the

9   Class at all. This case is also very different from a "statutory fee shifting" case, in which the

10  defendant has not agreed to pay plaintiff's counsel's fees and thus reserves the right to challenge

11  every item of work performed that underlies the requested fee.  Philips has agreed with Class

12  Counsel not to oppose fees and expenses not to exceed $114,500, and to pay that sum, subject to

13  Court approval. Because Philips has agreed to pay the fees and expenses in addition to the

14  proposed Settlement benefits, the Court need only approve the overall proposed Settlement

15  package – including its fee and expense provisions – as fair, reasonable, and adequate. *See, e.g.,*

16  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re M.D.C.*

17  *Holdings Sec. Litig.,* No. CV 89-0090 E(M), 1990 U.S. Dist. LEXIS 15488, at *12-*13 (S.D. Cal.

18  Aug. 30, 1990).

19          The court in *In re First Capital Holdings Corp. Fin. Prods.* Sec. Litig., MDL No. 901,

20  1992 WL 226321, at *4 (C.D. Cal. June 10, 1992), articulated three factors courts should consider

21  in evaluating a fee award made on the basis of the fact that it was negotiated: (1) whether there

22  was a conflict of interest or self-dealing on the part of plaintiff's counsel; (2) whether the fee was

23  negotiated at arm's-length with sophisticated defendants; and (3) whether the fee was negotiated

24  by attorneys who were intimately familiar with the case, the risks, the amount and value of their

25  time, and the nature of the result obtained for the class.

26          In the present case, there has been no conflict of interest or self-dealing, nor is there any

27  alleged. Instead, there has been only arm's length, adversarial negotiation. Counsel and

28  Defendant agreed on substantive terms of the proposed Settlement before discussing attorneys'

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

9

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

1  fees.  See Rott Decl. at ¶ 9.   Only then, the parties engaged in negotiations over the fee amount

2  that was fair and reasonable and would not in any way impact the benefit provided to the Class.

3  There is no evidence of conflict of interest or self-dealing on the part of Counsel, because

4  there is none.  No class benefits were traded for increased fees. *Id.* at ¶ 9.  Class Counsel had been

5  prosecuting Plaintiffs' claims for over a year and a half and was familiar with the case, the risks,

6  the amount and value of their time, and the nature of the benefits obtained for the Class. *Id.* at ¶¶

7  11, 25.  The record establishes that there was ample information on which to assess the adequacy

8  and reasonableness of the proposed Settlement. This factor "weigh[s] strongly in favor of

9  approval" of the negotiated fee that is being requested in the Application. *McBean v. City of New*

10  *York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). *See also In re Bluetooth Headset Prods. Liab. Litig.*,

11  654 F.3d at 945 (in determining fee award in class action settlements, "district court should (1)

12  decide whether to treat the settlement as a common fund; (2) choose the lodestar or percentage

13  method for calculating a reasonable fee and make explicit calculations; (3) ensure that the fee

14  award is reasonable considering, inter alia, the degree of success in the litigation and benefit to

15  the class; and (4) if standard calculations yield an unjustifiably disproportionate award, adjust the

16  lodestar or percentage accordingly.").

17  **C. As the Complaint Contains California Claims, California Law Controls the Issue of**

18  **Attorneys' Fees and Costs.**

19  Jurisdiction in this action is premised on 28 U.S.C. § 1332(d)(2) as revised under the

20  Class Action Fairness Act, 28 U.S.C. §§ 1711, et seq. ("CAFA").  The causes of action alleged in

21  the amended complaint are state law causes of action: breach of warranty, and violation of the

22  CLRA and the UCL and the FAL.

23  Accordingly, California state law dictates both the determination of the right to an

24  attorneys' fee and the method of its calculation. *Vizcaino v. Microsoft*, 290 F.3d 1043, 1047 (9th

25  Cir. 2002); *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1479 (9th Cir. 1995); *Kern Oil*

26  *& Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1388 (9th Cir. 1986) (state law applies in

27  determining not only the right to fees, but also in determining the method of calculating the fees).

28  *See also Diamond v. John Martin Co.*, 753 F.2d 1465, 1467 (9th Cir. 1985) ("The rule in this

circuit requires that federal courts in diversity actions apply state law with regard to the allowance (or disallowance) of attorneys' fees."). Class Counsel's entitlement to fees under California law is derived from two sources: the substantial benefit theory under Section 1021 of the California Code of Civil Procedure and the prevailing party theory under section 1780(d) of the Civil Code. *See Serrano v. Unruh*, 32 Cal. 3d 621, 629 (1982).

Furthermore, CAFA's provisions regarding attorneys' fees must also be considered by this Court. Under 28 U.S.C. §§ 1712 (b)(1) and (c)(2), where, as here, Class Counsel has conferred a non-coupon based benefit to the class (i.e., the packaging and advertising of the AirFloss no longer suggests that the AirFloss should be used as an alternative to flossing), any fees awarded relating to the equitable relief must be based on the "time reasonably expended in working on the action" with an applicable multiplier. See 28 U.S.C. §§ 1712 (b)(1)-(2) and (c)(2)

Under California law, it is well established that the Courts generally apply a lodestar/multiplier approach in class action fee requests. Under this methodology, a two step process is undertaken by the court: the lodestar of the attorneys (reached by multiplying the reasonable hours spent on the litigation by the applicable hourly rate) is then adjusted upwards to take into account risk and other factors. *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (Cal. App. 1st Dist. 2009). The lodestar/multiplier approach is generally used by California Courts, where, as here, no "common fund" has been created under the settlement. *See, e.g., Lealao v. Beneficial Cal., Inc.,* 82 Cal. App. 4th 19 (Cal. App. 1st Dist. 2000) (lodestar is the proper methodology for calculating reasonable attorneys' fee in the absence of an identifiable common fund); *see also Hanlon*, 150 F.3d at 1029 (noting that lodestar method is used more often in cases where "there is no way to gauge the net value of the settlement or any percentage thereof.") Further, because the attorneys' fees will be paid solely by the Defendant Philips, and the Class does not incur any separate fees or costs to obtain the benefits of the settlement, the lodestar method is more appropriate.

Given the technical and otherwise complex nature of this case, the number of hours expended by Plaintiffs' Counsel (187.1 hours) is entirely reasonable. Counsel's efforts in prosecuting the case amount for the majority of the number of lodestar hours and are described in

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 · FAX (619) 296-5171

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

1   detail in the Attorney Declaration. *See generally, Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556

2   F.3d 815, 827 (9th Cir. 2009) (when awarding fees under California law, declarations of an

3   attorney as to the number of hours and time devoted to the case is "sufficient evidence to support

4   an award of attorney fees.") Indeed, the number of hours devoted to a particular case is

5   necessarily a subjective judgment, involving questions of strategy and approach that are unique to

6   each case. Here, Counsel conducted the litigation to ensure all tasks were streamlined and the

7   hours expended in prosecution of the case was efficient. Thus, unless on its face the amount of

8   hours submitted appears unreasonable, generally courts accept as true the submission of class

9   counsel. *See Jacquette v. Black Hawk County*, 710 F.2d 455, 460 (8th Cir. 1983) ("the difficulty

10  with [appraising whether hours were reasonably necessary to the litigation involved] is that a

11  judge is seldom able to make adequate appraisal of what is necessary for counsel to do or not do

12  in a given case. This appraisal turns on so many subjective factors that it seldom should be the

13  basis for reduction of an attorney fee.").

14      Further, the rates submitted by Plaintiff's Counsel are their normal hourly rates, and more

15  importantly, these rates are in line with the prevailing rates in California. *See, e.g., Buccellato v.*

16  *AT&T Operations, Inc.*, No. C10–00463–LHK, 2011 WL 4526673 (N.D. Cal. June 30, 2011)

17  (rates for attorneys approved between $290.00 per hour up to $740.00 per hour for attorneys)

18  (Koh, J.); *In re Nuvelo, Inc.* Sec. Litig., No. C 07–04056 CRB, 2011 WL 2650592 (N.D. Cal. July

19  6, 2011) (approved rates for attorneys between $350.00 per hour to $700.00 per hour for

20  attorneys) (Breyer, J.); *see also Stratton v. XTO Energy Inc.*, No. 02-10-00482-CV, 2012 Tex.

21  App. LEXIS 1089, at *18-*19 (Tex. Ct. App. Feb. 9, 2012) (holding that rates submitted by class

22  action plaintiffs' counsel were reasonable and customary, and federal citing cases). As detailed in

23  the accompanying Attorney Declaration, the hours and the rates charged are reasonable and

24  should be approved by the Court and, as discussed below, an appropriate multiplier applied to the

25  lodestar of the Class Counsel should also be approved.

26  ///

27  ///

28  ///

**D. The Court Should Grant Class Counsel's Fee Application, Since it Represents a Reasonable Lodestar and Multiplier**

In support of the current motion, Class Counsel has submitted a declaration evidencing the reasonable current hourly rates for their services and establishing the number of hours spent litigating the case over the past year and a half. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement."). Plaintiffs' attorneys' hourly rates are reasonable and customary. *See, e.g., Bihun v. AT&T Info. Sys., Inc.*, 13 Cal. App. 4th 976, 997 (Cal. App. 2d Dist. 1993).

As previously noted, after the Court has considered Plaintiffs' Counsel's lodestar (i.e., the hours spent using the attorneys' rates), the Court then applies a multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented. *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 833 (Cal. App. 1st Dist. 2001) (citing *Lealao*, 82 Cal. App. 4th at 26). "The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).

In *Serrano v. Priest*, 20 Cal. 3d 25 (1977), the California Supreme Court set forth the following factors that the trial court may consider in adjusting the lodestar figure:

> (1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; (4) the fact that an award against the state would ultimately fall upon the taxpayers; (5) the fact that the attorneys in question received public and charitable funding for the purpose of bringing law suits of the character here involved; [and] (6) the fact that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed.

*Id.* at 49. Of these factors, only factors 1, 2, and 3 apply to class actions vindicating consumer

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL. (619) 296-5884  FAX (619) 296-5171

13

1    rights. See Thayer, 92 Cal. App. 4th at 834 (deeming factors 4, 5 and 6 "inapplicable" to court's

2    review of attorneys' fee award in consumer-protection class action).

3        At this juncture, the total lodestar of Class Counsel is: $98,295.00  *See* Rott Decl. at ¶¶

4    12- 15. Total expenses is $485.50. *Id.* at ¶ 27.   The total fee requested, is therefore $114,014.50

5    In this case, Class Counsel seeks a mid-level 1.16x multiplier on the reported lodestar of

6    Plaintiffs' Counsel. *Id.* at ¶ 15. .

7        However, a portion of the fee requested is attributable to the above stated equitable benefit

8    conferred upon the class pursuant to 28 U.S.C. 1712(b)(1) and (c)(2).  In order to calculate the

9    portion of fees that are attributable to the non-coupon benefit, Class Counsel has calculated the

10    amount of time that this Firm spent before the ENE.  This is because 1) the packaging issue had

11    been resolved in principle prior to the ENE and 2) the coupon was negotiated at the ENE and the

12    preliminary approval process was based on the approval of the coupon and class notice.  Since the

13    non-monetary benefit happened as a result of Philips changing their marketing plans, court

14    approval was not needed.  Therefore, our calculation of the attorney fees for the non-monetary

15    benefit is based on work prior to the ENE and prior to the court approval process. *See* Rott Decl

16    at ¶¶ 16 – 26.

17        The total amount of hours spent researching the case, discussing the marketing with the

18    defense, and litigating the case up to April 2, 2013, which does not include the ENE or the

19    preparation for the ENE, the review and analysis of the settlement documents, motion the

20    preliminary approval drafting or this final approval is <u>137.93 hours</u>. *Id.* at ¶ 23.  This equals a

21    total lodestar of *$74,598*. *Id.* at. ¶ 24.  With a 1.16 multiplier, the <u>total adjusted fee</u> for work

22    performed pursuing this action would be $86,533.68.

23        Class Counsel requests that the Court award <u>50% of the adjusted fee</u> to be paid for the

24    non-monetary benefits provided to the class in the amount of <u>$43,266.84</u>, representing merely

25    33% of the total fee.  The other 63% of the total fee shall be paid upon a determination of the

26    redemption rate of the vouchers.  In part this, split is the result of the benefit conferred (i.e. people

27    are not likely to think that this product replaces traditional flossing) and because a significant

28    amount of time and resources was put into researching how and why the claims on the packaging

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884 · FAX (619) 296-5171

1   were deceptive.  The $43,266.84 fee request represents a discount for the fact that the work

2   performed was to achieve both goals in the case: stop Philips from misleading the class members

3   and the public and to provide compensation to the class.

4           In addition, Class Counsel requests that the Court reserve jurisdiction to determine the

5   fees that are attributable to the coupon redemption rate.

6           When viewed in the context of the risks and complexity inherent in this case and the

7   benefits obtained in light of these risks, Counsel's request is well within the range of reason. The

8   fee request is not a windfall, particularly in light of the benefit obtained for the Class.  As detailed

9   below, in view of the applicable *Serrano* factors, the request should be approved by this Court.

10  **1. The novelty and difficulty of the questions involved, and the skill displayed in presenting**

11  **them.**

12          This case involves technical issues regarding how plaque and food debris builds up in the

13  teeth and gums, how teeth are cleaned with traditional floss, and the efficacy of mechanical

14  devises that purport to replace traditional floss.  Plaintiffs dedicated significant time and effort to

15  analyzing and understanding the nature of the defect and Philips' related conduct. *See* Rott Decl.

16  ¶¶ 2-4.  In particular, Plaintiffs dedicated significant time to researching dental practices to

17  analyze how and why the advertising is misleading. *Id.* at ¶ 3.

18          Moreover, because of the unique circumstances surrounding the advertising, this case is

19  not one in which Class Counsel could simply stand on the shoulders of other lawyers who were

20  litigating similar cases in other jurisdictions, or simply piggyback onto a governmental agency's

21  investigation. *See In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1056 (Cal. App. 1st Dist. 2003)

22  (noting the risk involved in the case was not as great as plaintiffs' counsel portrayed it because

23  the case "was similar to litigation filed throughout the country" and Plaintiffs' counsel benefitted

24  from defendants' guilty pleas in other, related cases). To the contrary, Class Counsel had to forge

25  the path in analyzing and developing the factual basis and liability claims in this case.  Moreover,

26  the issues here, because they involve oral hygiene and floss design, are beyond the ordinary case

27  involving an ordinary deceptive advertising, required substantial technical knowledge and

28  substantial expertise in order to validate the liability claims. *See* Rott Decl. at ¶ 3.

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

15

1       Accordingly, in analyzing an appropriate fee the Court should take into account the

2   unique and complex qualities of this case and the skill shown in achieving meaningful benefits.

3   In the end, a genuine recovery, highly favorable to Settlement Class Members, was attained.

4   **2. The extent to which the nature of the litigation precluded other employment by the**

5   **attorneys.**

6       Class Counsel have devoted over 187.1 hours to this case over a period of almost a year

7   and a half. *Id.* at ¶ 12. Like other law firms (and in particular, those that primarily handle

8   contingent fee work), Counsel has limited time and resources—as a result, they are restricted in

9   the number of other cases it can take on and still provide effective representation. This factor also

10  weighs heavily in favor of approving Class Counsel's agreed upon attorneys' fees.

11  **3. The contingent nature of the fee award.**

12      The purpose of increasing an attorneys' lodestar figure by a multiplier is "to compensate

13  for the risk of loss generally in contingency cases as a class." *Beasley v. Wells Fargo Bank*, 235

14  Cal. App. 3d 1407, 1419 (Cal. App. 1st Dist. 1991), overruled on other grounds *Olson v. Auto*

15  *Club of S. Cal.*, 42 Cal. 4th 1142 (2008). Rather than overcompensating class action attorneys or

16  providing them with a windfall, increasing the lodestar in class action cases does nothing more

17  than "approximate market level compensation for [an attorneys'] services, which typically

18  includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Ketchum*,

19  24 Cal. 4th at 1138. Refusal to apply a multiplier to an attorney's lodestar fails to compensate the

20  attorney "for contingent risk, extraordinary skill, or any other factors a trial court may consider

21  under [*Serrano*]." *Id.*

22      A modest multiplier of 1.16x in this particular case is reasonable in awarding Class

23  Counsel's fee request is in this case, given the risk they necessarily assumed in taking on this

24  litigation on a contingent basis. Upward multipliers are common. *Grannan v. Alliant Law Group,*

25  *PC*, No. C10–02803 HRL, 2012 WL 216522, at *10 (N.D. Cal. Jan. 24, 2012) ("In class actions,

26  where counsel works on a contingency basis and risks receiving nothing for the time and effort

27  expended, it is reasonable to apply a multiplier to the lodestar value."). Class Counsel prosecuted

28  this case since March 2012 without compensation and without assurance that it would be

HIDEN, ROTT & OERTLE, LLP

2635 Camino Del Rio South, Suite 306

San Diego, California 92108

TEL (619) 296-5884 · FAX (619) 296-5171

1  successful on the merits. Class Counsel also paid all of their own expenses to pursue this

2  litigation without any guarantee of recouping those funds by prevailing in the case. Typically,

3  expenses such as these are billed to a client and are not included as overhead in the hourly rates

4  attorneys charge. *See Beasley*, 235 Cal. App. 3d at 1421-22. Despite the significant danger of

5  their efforts going for naught, Class Counsel provided its considerable litigation experience and

6  expertise to this case and was able to achieve a genuine, tangible recovery for the Class in the

7  form of non-monetary benefits as well as a valuable voucher. Accordingly, this factor weighs in

8  favor of approving Class Counsel's fee and expense request.

9  **4. The results obtained by Class Counsel.**

10  California law recognizes that lodestar enhancement is appropriate where, as here, "an

11  exceptional effort produced an exceptional benefit." *Thayer*, 92 Cal. App. 4th at 838. Multipliers

12  are justified because, typically, "high quality work may produce greater results in less time than

13  would work of average quality." *Id.* In spite of the complexities involved and the contentious

14  nature of the litigation, this case was brought to a timely conclusion with a result that places a

15  highly favorable benefit into the hands of Settlement Class members. *See Lundell v. Dell, Inc.*,

16  No. CIVA C05-3970 JWRS, 2006 WL 3507938, at *4 (N.D. Cal. Dec. 5, 2006) (explaining that a

17  repair right obtained in a settlement is very valuable benefit) (Ware, J.).

18  Moreover, as the Ninth Circuit has repeatedly made clear, a settlement's value should be

19  analyzed in terms of the total benefit made available to the class, not on the total number of class

20  members that decide to avail themselves of the benefit. *See Williams v. MGM-Pathe Commc'ns*

21  *Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (ruling that a district court abused its discretion in

22  basing attorney fee award on actual distribution to class); *Glass v. UBS Fin. Servs., Inc.*, No.

23  C06-4068 MMC, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 1997) (district court must award

24  fees as a percentage of the entire fund, or pursuant to the lodestar method, not on the basis of the

25  amount of the fund actually claimed by the class) (Chesney, J.); *Young v. Polo Retail, LLC*, No.

26  C-02-4546 VRW, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007) (noting that the Ninth

27  Circuit bars consideration of class' actual recovery in assessing a fee award) (Walker, J.). This is

28  consistent with Supreme Court precedent. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480

1   (1980) ("[The Class'] right to share the harvest of the lawsuit upon proof of their identity,

2   whether or not they exercise it, is a benefit in the fund created by the efforts of the class

3   representatives and their counsel."). *See also Herbert B. Newberg & Alba Conte*, 4 Newberg on

4   Class Actions §14:6 (4th ed. 2002) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this

5   question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially

6   available to be claimed, regardless of the amount actually claimed.").

7       When a settlement provides for coupon relief, either in whole or in part, the portion of the

8   dee that is "attributable to the award of coupons" must be calculated using the redemption value

9   of the coupons. *See* 28 U.S.C. § 1712(a). However, where a fee is based not solely on the

10  coupon value of the settlement, but on factors other than the coupons, then, "any attorney's fee

11  award shall be based upon the amount of time class counsel reasonably expanded working on the

12  action." 28 U.S.C. sec. § 1712(b)(1). Further, the CAFA statute makes it clear that any total

13  attorney fee "shall include an appropriate attorney's fee, if any, for obtaining equitable relief,

14  including an injunction, if applicable." 28 U.S.C. § 1712(b)(1). In the event that some portion

15  of the fee is to be based on equitable relief, then that portion shall be based on 28 U.S.C. §

16  1712(b), allows fees to be calculated based on a lodestar and multiplier. *See* 28 U.S.C. §§

17  1712(c)(2) and 28 U.S.C. 1712(b)(1)-(2).

18      The Court must perform two separate calculations: "First, under subsection (a), the court

19  must determine a reasonable contingency fee based on the actual redemption value of the coupons

20  awarded. Second, under subsection (b), the court must determine a reasonable lodestar amount to

21  compensate class counsel for any non-coupon relief obtained." *Feder v. Frank (In re HP Inkjet*

22  *Printer Litig.)*, 716 F.3d 1173, 1184 (9th Cir. Cal. 2013).

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171

18

1   If the value of the coupons are not ascertainable at the time of the Final Settlement

2   hearing, the Court can bifurcate the attorney fee decision for the injunctive portion and then hold

3   a separate inquiry as to the value of the coupn redemption.  *See Id.* at 1187-1188.  See *also*

4   footnote 19:

> For example, a fees award can be bifurcated or staggered to take into account the speculative nature of at least a portion of a class recovery.  *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 334 (3d Cir. 1998) ("The district court's plan [to bifurcate the fees award was a sound exercise of its discretion that] was designed to overcome the speculative nature of the tentative and imprecise settlement valuations. It took into account the settlement's more definite terms by providing an immediate payment based on a percentage of the guaranteed minimum recovery of $410 million, while requiring future payments to be based on actual results in recognition that the ultimate class recovery is not quantifiable at this point."); *In re AT&T Corp.,* 455 F.3d 160, 175 (3d Cir. 2006) (recognizing that a bifurcated fees structure "obviate[d] the need to guesstimate the value of the settlement."); *see also Foster v. Bd. of Sch. Comm'rs,* 810 F.2d 1021, 1024 (11th Cir. 1987) (noting district court's decision to award attorney's fees to prevailing parties after each stage of a bifurcated trial). We leave open the question how best to award attorneys' fees under § 1712. *See Klonoff & Herrmann, supra,* at 1701–02 (discussing procedures district courts might employ to award attorneys' fees based on the redemption value of coupon relief).

15   In contrast to *In Re: HP Inkjet Printer Litigation,* here the voucher is good for twelve

16   months instead of six, the voucher is transferable instead of non-transferable  and there is not

17   limit on whether the voucher may be used with other discounts, as opposed to such limits. *See Id.*

18   at 1176; *See also* Stipulation of Class Action Settlement, pp. 15-16.  In addition, Class Counsel

19   was able to procure non-monetary benefits to the class by causing Philips to change the way that

20   they market the AirFloss.

21   A portion of the fee request is attributable to the equitable benefit conferred upon the

22   class. Class counsel has conferred a non-monetary benefit to the class and the general public by

23   causing Philips to change the way that they Market the AirFloss.  However, Philips disputes that

24   Class Counsel is responsible for the changes to the packaging and advertising.  It should be noted

25   that the settlement agreement forbids Philips from opposing our fees.  It is Class Counsel's

26   position that as long there was a benefit conferred, and as long the facts indicate that Class

27   Counsel played a part in obtaining that benefit, then Class Counsel should not lodge their

28   objection.

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

Philips' counsel has taken the position that the changes to the packaging were made completely independent of the litigation by Class Counsel. *See* Rott Decl. at ¶ 16. Class Counsel finds this argument self serving and unavailing for a number of reasons.

In Plaintiff's CLRA letter and in Plaintiff's Complaint, Plaintiff demanded that Philips discontinue the use of marketing their product as "An Easier Way to Floss". Shortly after litigation began, Philips reached out to Class Counsel and asked that Class Counsel provide solutions to our issues with the advertising and packaging. In an email, counsel for Philips, Brian England, followed up with his request by confirming that Philips wanted Class Counsel to provide "suggestion regarding the advertising at issues." See Rott Decl., ¶ 16 and Exhibit. 2, attached therewith. In response, Class Counsel provided a suggestion that would provide an immediate fix on existing packaging that neutralize the misleading statements with a sticker that states, "Not designed to replace traditional floss" in bold type. *Id.* Philips did not respond to Class Counsel's suggestion.

Then, months later, Class Counsel discovered that Philips had changed their advertising on their packaging from "An Easier Way To Floss" to "Don't Floss? Then AirFloss". Id. at ¶¶ 16-17 and Exhibits 3 &4 attached therewith. In addition, during the final phases of negotiation for settlement, Class Counsel requested and Philips provided confidential documents indicating additional changes to the product packaging that Philips intended to make to remove offending language. *Id.* Those changes are currently on the packaging for the AirFloss. *See Id.* at Exhibit 5.

Again, Philips disputes that the additional changes to the packaging had anything to do with the removal of the offending language complained of by Plaintiffs. However, the changes that were made completely removes the misrepresentations complained of by Plaintiff that the AirFloss is designed to be a replacement for traditional floss. For example, the package previously proclaimed that the AirFloss "Gently and effectively improves oral health". The packaging now takes a far more relaxed tone to the efficacy of the product by now proclaiming "Removes plaque where brushing can't." *Id.* at ¶¶ 16 -17 and Exhibits 3-5 attached therewith.

Philips has removed other all other offending language that Plaintiff has complained

20

1    about.  For example, the packaging no longer states "Floss your whole mouth in 60 seconds".

2    The packaging also does not state that "AirFloss takes the hassle out of flossing so you can get a

3    deep clean every day".  *See Id.*  It seems beyond refute that as a direct result of this litigation,

4    Philips abandoned their marketing campaign that the AirFloss should be used as a device to

5    replace traditional floss.  *Id.* Similar references as complained of in Plaintiffs complaint also no

6    longer appear on Philips' website. See Dkt #5; See also Rott Decl at ¶ 17 and Exhibit 6 attached

7    thereto.

8         In addition, the timeline for the changes proves that Class Counsel had an effect on

9    marketing.  Within months of Philips' counsel requesting the changes from Class Counsel, Class

10   Counsel noticed the packaging of the AirFloss had changed, and was nearly identical, except that

11   the main slogan had changed from "An Easier Way To Floss" to "Don't Floss? Then AirFloss".

12   This was likely a cheap and quick fix to the glaring headline that the AirFloss is a replacement for

13   traditional floss.  Thereafter, and before the ENE, Philips removed the rest of the offending

14   language, and materially changed their so as to provide a permanent fix to their misleading

15   advertising campaign.

16        Given that California courts place such a high value on settlement, lodestar enhancement

17   is particularly appropriate in a case such as this one.  *See Lealao*, 82 Cal. App. 4th at 52

18   ("Considering that our Supreme Court has placed an extraordinarily high value on settlement, it

19   would seem counsel should be rewarded, not punished, for helping to achieve that goal.")

20   (citations and footnote omitted). Despite the complexity of the issues involved here, Class

21   Counsel achieved genuine, non-coupon and coupon benefits for the Settlement Class.  This

22   recovery constitutes a substantial benefit conferred on the members of this statewide Settlement

23   Class.  The Court should award attorney fees based on Class Counsel's lodestar and a reasonable

24   multiplier for the non-coupon results achieved.

25   **5. Continuing obligations of Class Counsel.**

26        Should any challenges or appeals arise regarding the Court's final approval decision,

27   Class Counsel will be required to expend additional time and energy to research, brief and argue

28   those challenges or appeals.  In addition, Class Counsel continues to monitor the case and the

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884  FAX (619) 296-5171

1  progression of the settlement process. This settlement process can be expected to continue in
2  part because class members may still submit claims until January 20,2014, and Class Counsel
3  intends to continue to provide assistance to the Class whenever possible. *See* Dkt #24. Class
4  Counsel's unwavering commitment to the Settlement Class further supports approval of its
5  reasonable request for fees and expenses.

6  **6. The multiplier is within the range of reason and in the mid-level for cases of this nature.**

7  The above facts support the requested multiplier of 1.16x. Indeed, courts in California, in
8  this District and in this Circuit have awarded fees with similar and even greater, upward
9  adjustments. *See, e.g., Vizcaino*, 290 F.3d at 1051 (finding a multiplier of 3.65 appropriate); *Van*
10 *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3–4
11 range are common in lodestar awards for lengthy and complex class action litigation."); *In re*
12 *Charles Schwab Corp. Sec. Litig.*, No. C 08–01510 WHA, 2011 WL 1481424, at *8 (N.D. Cal.
13 Apr. 19, 2011) (finding a risk multiplier of 2.68 to be fair and reasonable, citing to *Van Vranken*
14 (multipliers of 3-4 range deemed reasonable in the Ninth Circuit)) (Alsup, J.); *In re Trilogy Sec.*
15 *Litig.*, C-84-20617(A) (N.D. Cal. Mar. 14, 1986) (awarding a multiplier of 4.37); *In re Veritas*
16 *Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 WL 3096079, at *13 (N.D. Cal. Nov. 15,
17 2005) (awarding a multiplier of 4) (Chesney, J.); *In re Cadence Design Sys., Inc. Sec. &*
18 *Derivative Litig.*, C-08-4966 SC, 2012 WL 1414092, at *5 (N.D. Cal. Apr. 23, 2012) (finding a
19 lodestar multiplier of 3.8 to be one "not necessarily outside the norm"); *In re Calif. Indirect*
20 *Purchaser X-Ray Film Antitrust Litig.*, No. 960886, 1998 WL 1031494, at *10 (Cal. Super. Ct.
21 Oct. 22, 1998) ("Cases from California and other jurisdictions reflect that multipliers of two or
22 more are commonplace in class actions.") (citation omitted); *Wilson v. Bank of America Nat'l*
23 *Trust & Sav. Ass'n., No.* 643872 (Cal. Super. Ct. Aug. 16, 1982) (multiplier of 10 times the
24 hourly rate awarded); *Glendora Comm. Redev. Agency v. Demeter*, 155 Cal. App. 3d 456, 465
25 (Cal. Ct. App. 1984) (affirming a 12-times multiplier of counsel's hourly rate and expressly
26 rejecting the argument that the requested fee was exorbitant or unconscionable).

27 ///

28 ///

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL. (619) 296-5884 FAX (619) 296-5171

**E. The Court Should Also Award Plaintiff's Counsel Their Reasonable Costs And Expenses**

Plaintiffs' Counsel incurred expenses and costs in the amount of $485.50. *See* Rott Decl. at ¶ 27. Under California law, these costs would be allowed as reasonable. However, because the agreement with Philips includes a lump sum for fees and expenses, the amount of will have to be deducted from the fee award, further justifying the lodestar multiplier. Accordingly, Class Counsel requests the Court reimburse Plaintiffs' Counsel their expenses in the amount of $485.50

**F. The Class Representatives' Incentive Award is Appropriate and Reasonable.**

Courts routinely award "service" or "incentive" fees or stipends to named plaintiffs in class actions. For example, the Ninth Circuit has recognized that rewarding class representatives for their participation is commonplace, having "approved incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $1.725 million." *Staton*, 327 F.3d at 976-77. In *Staton*, the court also referenced three cases in which the service fees ranged from $2,000 to $5,000. Id. (citing *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990)). The Court should award the unopposed service fee in this case.

Plaintiff consistently and responsibly met her obligations as class representative and contributed to the successful resolution of this matter. She produced documents to Class Counsel and stood ready to be deposed if the need arose. Plaintiff also attended the mediation session in front of the Hon. Bernard G. Skomal. Plaintiff, as Class Representative raised issues with Class Counsel, and felt free to question, if not challenge, Class Counsel's opinions concerning the litigation. In the opinion of Class Counsel, this Class Representatives, who was responsive, inquisitive and willing to participate, epitomized the role of the class representative in this type of litigation and, therefore, should  be awarded the $750 service fee, which Philips does not oppose. As with the attorneys' fee, this award would not in any way diminish the recovery for the Class. *See* Rott Decl. at ¶ 28.

///

///

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884    FAX (619) 296-5171

NOM, MOT AND MPA ISO ATTORNEY'S FEES, COSTS AND SERVICE AWARD 12-CV-1414H BGS

1  **V. NO OBJECTIONS FROM CLASS MEMBERS TO THE FEE REQUEST IS AN**
2  **IMPORTANT FACTOR**

3  As of the date of the filing of this motion, Class Counsel is not aware of any class member
4  who objected to the amount of the fee application. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d
5  1370, 1378 (9th Cir. 1993); *see also In re Rite Aid Sec. Litig.*, 396 F.3d 294, 305 (3rd Cir. 2005)
6  (finding that district court did not abuse its discretion by finding that the absence of substantial
7  objections by class members to fee request weight in favor of approval); *In re Relafen Antitrust*
8  *Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005) (approving fee request despite four objections); *Maley*
9  *v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("The reaction by
10  members of the Class is entitled to great weight by the Court."). This should weigh in favor of
11  approving the attorney's fees, costs and the class representative service award.

12  **VI. CONCLUSION**

13  For all the foregoing reasons, Class Counsel respectfully requests that this Court grant its
14  Application and award them $43,266.84 for fees, reimbursement of litigation costs, and awarding
15  the representative Plaintiff a modest service award in the sum of $750.00. Class Counsel requests
16  that this Court retain jurisdiction over the determination of the remainder of Class Counsel's fee,
17  to be determined when the redemption rate of the Coupons is ascertainable.

18  Dated: October 7, 2013                    **HIDEN, ROTT & OERTLE, LLP**

19

20

21                                                   By:    S/ERIC M. OVERHOLT
22                                                          Michael Ian Rott, Esq.
23                                                          Eric M. Overholt, Esq.
                                                            *Attorneys for Plaintiff and the Class.*

HIDEN, ROTT & OERTLE, LLP
2635 Camino Del Rio South, Suite 306
San Diego, California 92108
TEL (619) 296-5884   FAX (619) 296-5171