1

2

3

4

5

6                **UNITED STATES DISTRICT COURT**

7            **SOUTHERN DISTRICT OF CALIFORNIA**

8

9

10 LILIA PERKINS, on behalf of herself and all others similarly situated,

11                    Plaintiff,

12     vs.

13

14

15 PHILIPS ORAL HEALTH CARE, INC., a Washington Corporation;

16 PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, a

17 Delaware Corporation; and DOES 1 through 20, inclusive,

18               Defendants.

19

CASE NO. 12-CV-1414-H (BGS)

**ORDER:**

**(1) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT;**

**(2) APPROVING PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

20

21       On October 7, 2013, Plaintiff Lilia Perkins ("Plaintiff"), on behalf of herself and

22 the provisional certified class (together "Plaintiffs"), filed a motion for final approval

23 of class settlement and a motion for approval of attorneys' fees, costs, and service

24 award. (Doc. Nos. 27, 28.) Defendants Philips Oral Health Care, Inc. and Philips

25 Electronics North America Corporation ("Defendants" or "Philips") have not opposed

26 the motions. On November 4, 2013, the Court held a hearing on the motions. Attorneys

27 Eric Maxwell Overholt and Michael Ian Rott appeared on behalf of Plaintiff. Attorneys

28 Brian R. England and Michael H. Steinberg appeared on behalf of Defendants. For the

reasons set forth below, the Court grants the motions.

1

**Background**

2      This case arises out of Defendants' efforts to market their product, the AirFloss.

3 Plaintiff alleges that Defendants falsely advertised the AirFloss as a substitute for

4 traditional floss. (Doc. No. 4 ("FAC") ¶ 2.)

5 **A.      Procedural History**

6      On September 20, 2012, Plaintiff filed a class action complaint against

7 Defendants on behalf of herself and "[a]ll persons in California who purchased a

8 Philips Sonicare Airfloss." (FAC ¶ 29.) In her complaint, Plaintiff alleges claims of

9 breach of express warranty, Cal. Com. Code § 2313; violations of California's Unfair

10 Competition Law ("UCL"), Bus. & Prof. Code § 17200; violations California's False

11 Advertising Law ("FAL"), Bus. & Prof. Code § 17500; and violations of the Consumer

12 Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1780. (FAC ¶¶ 43-81.) On December

13 7, 2012, the Court granted Defendants' motion to dismiss the express warranty claim

14 and the CLRA claim under Cal. Civ. Code § 1770(a)(4), but denied Defendants'

15 motion to dismiss the UCL, FAL, and other CLRA claims. (Doc. No. 12.) Plaintiff did

16 not file an amended complaint within the thirty day period provided by the Court.

17      The parties participated in a mediation with the magistrate judge and after

18 subsequent negotiations reached a preliminary agreement. (Doc. No. 18.) On May 28,

19 2013, the parties filed a joint motion for preliminary approval of class settlement. (Doc.

20 No. 20.) On July 11, 2013, the Court granted preliminary approval of the proposed

21 settlement. (Doc. No. 24.)

22 **B.      Settlement**

23      The settlement provides relief to a putative class generally comprising persons

24 who, between January 1, 2011, and June 24, 2013, purchased a new AirFloss in

25 California. (Doc. No. 27-2 ("Settlement") at 9.) The settlement establishes three

26 categories of claimants. Class members who submit proof of purchase of a new, two-

27 pack AirFloss belong to Category A of Tier 1 and will receive a voucher for $33.  (Id.

28 at 14.) Class members who submit proof of purchase of a new, single-pack AirFloss

belong to Category B of Tier 1 and will receive a voucher for $23. (Id. at 14-15.) Class members who fail to submit proof of purchase may submit an attestation that they purchased a new AirFloss within the class period. Those class members belong to Tier 2 and will receive a voucher for $7. (Id. at 15.) There is no limit on the total number of vouchers distributed to the class in the aggregate; however, each household is limited to two vouchers for Tier 1 class members and one voucher for Tier 2 class members. (Id.) The vouchers are fully transferrable, but must be used within twelve months. (Id.) The vouchers "may be used for the purchase of any new (i) Philips audio or video products (excluding televisions), (ii) Philips Norelco shaving and grooming products, (iii) Philips Sonicare oral care products, (iii) [sic] Philips accessories, and (iv) [sic] Avent-branded products." (Id. at 16.)

In exchange, class members, other than those who opt-out, agree to release all claims "arising from, or in any way related to, the design, sale, marketing or advertising of an AirFloss," except for personal injury claims. (Id. at 23-24.)

Philips will be responsible for payment of all Claims Administrator Expenses and all Notice Expenses, including the CAFA notice. (Id. at 16.)

**C.   Preliminary Approval of the Settlement and Reactions of the Proposed Class Members**

On May 28, 2013, following a hearing on the motion, the Court granted (1) Plaintiff's request for provisional certification of the class, (2) Plaintiff's request to be appointed as class representative, (3) Plaintiff's request for preliminary approval of the proposed settlement, (4) Plaintiff's request for appointment of class counsel, and (5) ordered the parties to disseminate notice of the settlement to class members. (Doc. No. 24.) In July of 2013, the settlement administrator began effectuating the notice plan by sending various mailings to class members and causing the Publication Notice to be published in various newspapers and websites. (Doc. No. 27-8 "Dahl Decl.".) The notice and Settlement Website provided class members with an opportunity to file a claim for a voucher, opt out of the settlement, or object to the settlement. (Dahl Decl.

Ex. A-H.) The parties filed a motion proposing January 20, 2014 as the last day that class members can file claims, (Doc. No. 25 at 6), and the Court preliminarily approved that date. (Doc. No. 26 at 2.)

As of October 7, 2013, the administrator sent 4,044 email notices, and 78 postcards. (Dahl Decl. ¶¶ 5-11.) The toll-free Settlement Information Line had received 179 phone calls. (Dahl Decl. ¶ 20.) The settlement administrator targeted the web notice to internet users in California, resulting in 40,412,142 impressions. (Dahl Decl. ¶¶ 14-16.) As of October 20, 2013, class members have submitted 724 proof of claim forms to the settlement administrator. (Doc. No. 34 at 9.)

As of October 7, 2013, the administrator has received 36 requests from potential class members for Long Form Notice and Proof of Claim Form packets. (Dahl Decl. ¶ 23.) As of October 20, 2013, four class members have opted out, and no class members have sent objections to class counsel or the administrator. (Doc. No. 34 at 9.) October 14, 2013 was the last day for any class member to file an objection to the proposed settlement. (Id.)

## Discussion

When the parties reach a settlement agreement prior to class certification, the court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is fundamentally fair, adequate, and reasonable. Id.

## I.      Class Certification

A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). In the present case, Plaintiff seeks to certify a class for settlement purposes defined as follows:

1
2
3
4
5

[A]ll California residents who purchased a new AirFloss in California between January 1, 2011 and June 24, 2013. Excluded from the Settlement Class are: (1) any Person that has already obtained any refund from Philips or any retailer in connection with the AirFloss for which the Class Members seek relief in this case, (2) any Person who files a valid, timely Request for Exclusion; (3) any Person who purchased an AirFloss, but gave it away as a gift; and (4) any Judges to whom this Action is assigned and any member of their immediate families.

6

(Doc. No. 27-2 ¶ A-38.)

7

## A.    Rule 23(a) Requirements

8
9
10

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

11
12
13
14
15

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In this case, notice went out to 4,044 class members who were registered purchasers of the product in California. (Dahl Decl. ¶ 10.) This large number of class members renders joinder impractical for this case. Accordingly, the numerosity prerequisite is met in this case.

16
17
18
19
20
21
22
23

The commonality prerequisite is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). All questions of fact and law need not be common, but rather "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Id. Here, there are many questions of law and fact that are common to the class, such as whether Defendants falsely advertised the AirFloss product. Accordingly, the commonality prerequisite is met.

24
25
26
27
28

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(c). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as

1  the class members." <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 156

2  (1982). Here, Plaintiff and purported class members share the same injury – purchase

3  of an AirFloss product based on alleged misrepresentations and false advertising. (FAC

4  ¶ 2.) As Plaintiff's claims are reasonably co-extensive with the claims of absent class

5  members, the typicality prerequisite is met.

6      Adequacy of representation under Rule 23(a)(4) requires that the class

7  representative be able to "fairly and adequately protect the interests of the class." Fed.

8  R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiff and class counsel

9  (1) do not have any conflicts of interest with other class members and (2) will

10  prosecute the action vigorously on behalf of the class. <u>Hanlon</u>, 150 F.3d 1020. Here,

11  there does not appear to be any conflicts of interest between Plaintiff and the absent

12  class members. Additionally, Plaintiff has pursued the interests of the class by, among

13  other actions, hiring counsel to prosecute the class members' claims. (Doc. No. 27-1

14  "Rott Decl." ¶ 1.) Plaintiff's counsel has expended time and resources in prosecuting

15  this action. For example, counsel "interviewed several dentists to discuss the efficacy

16  of oral irrigators in general and the AirFloss specifically," reviewed customer

17  complaints, and interviewed consumers of the product. (Rott Decl. ¶¶ 2-3.)

18  Accordingly, the adequacy of representation requirement is met in this case, and thus

19  the Court appoints Plaintiff as class representative.

20      For the foregoing reasons, Plaintiff has met all of the requirements of Rule 23(a).

21  **B.    Rule 23(b)(3)**

22      Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact

23  common to class members predominate over any questions affecting only individual

24  members;" and (2) "that a class action is superior to other available methods for fairly

25  and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These

26  requirements are referred to as the "predominance" and "superiority" tests. <u>See Hanlon</u>,

27  150 F.3d at 1022-23; <u>Pierce v. Cnty. of Orange</u>, 526 F.3d 1190, 1198 n.5 (9th Cir.

28  2008). Rule 23(b)(3)'s predominance and superiority requirements are designed "to

cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., p. 696-97).

### 1.  Predominance

The predominance inquiry tests "'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). This analysis requires more than proof of common issues of law and fact. Hanlon, 150 F.3d at 1022. Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication." Id. (internal quotation omitted). Courts have found that common factual issues involving a single advertisement seen by all class members can predominate over individual issues. See Weeks v. Kellogg Co., No. 09-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) (certifying a class under Rule 23(b)(3) alleging that defendant's marketing campaign that certain of its cereal products can support a family's immune system was false and misleading); cf. Gonzalez v. P&G Co., 247 F.R.D. 616, 622-23 (S.D. Cal. 2007) (refusing to certify consumer class action as evidence showed that defendant "employed a wide variety of representations in its labeling, television commercials, website promotions, and other promotions" and, thus, class members may have relied on different representations or may not have been exposed to any of the allegedly false representations).

Here, the significant issue is whether Defendants misrepresented the efficacy of the AirFloss product. Plaintiff identifies specific representations that appear on the AirFloss package, on Defendants' website and other internet sites, and in print media as false or misleading. (FAC ¶¶ 5-6.) Although presented in different media, the identified representations consistently compare the efficacy of the AirFloss to traditional floss. (Id.) Plaintiff does not allege, nor do Defendants contend that

1   Defendants employed a wide variety of representations in marketing the AirFloss
2   product. Thus, there has been no showing that the potential class members relied on
3   different representations in purchasing their AirFloss products. As such, Defendants'
4   marketing of the AirFloss is a common issue that can predominate over the individual
5   issues in this case. <u>Weeks</u>, 2011 U.S. Dist. LEXIS 155472 at *35-36. Additionally,
6   some of the potential individual issues may not require individualized proof. <u>See In re</u>
7   <u>Tobacco II Cases</u>, 46 Cal. 4th 298, 326 (2009) (holding that plaintiffs need not prove
8   individual reliance under the fraudulent prong under the UCL if "there is a showing
9   that a misrepresentation was material"). Accordingly, the Court concludes that Plaintiff
10  has met her burden to show that the issues common to the class predominate over the
11  individual issues. Fed. R. Civ. P. 23(b)(3).

12              **2.    Superiority**

13          The superiority inquiry requires determination of "whether objectives of the
14  particular class action procedure will be achieved in the particular case." <u>Hanlon</u>, 150
15  F.3d at 1023 (citation omitted). Notably, the class-action method is considered to be
16  superior if "classwide litigation of common issues will reduce litigation costs and
17  promote greater efficiency." <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th
18  Cir. 1996) (citation omitted). Here, there is no evidence that absent class members wish
19  to pursue their claims individually. Further, classwide treatment of these issues will be
20  efficient as the class members' claims appear to involve a relatively small amount of
21  damages per member. (<u>See generally</u> FAC.) Accordingly, the superiority requirement
22  is met here.

23          For the foregoing reasons, Plaintiffs have satisfied the requirements of Rule
24  23(b)(3). Accordingly, the Court grants certification to the proposed class for purposes
25  of settlement.

26  ///

27  ///

28  ///

1   **II.    The Settlement**

2       Rule 23(e) requires the court to determine whether a proposed settlement is

3   "'fundamentally fair, adequate, and reasonable.'" Staton, 327 F.3d at 959 (quoting

4   Hanlon, 150 F.3d at 1026). To make this determination, the court must consider a

5   number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense,

6   complexity, and likely duration of further litigation; (3) the risk of maintaining class

7   action status throughout the trial; (4) the amount offered in settlement; (5) the extent

8   of discovery completed, and the stage of the proceedings; (6) the experience and views

9   of counsel; (7) the presence of a governmental participant; and (8) the reaction of class

10  members to the proposed settlement. Id. In addition, the settlement may not be the

11  product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig.,

12  213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d

13  1268, 1290 (9th Cir. 1992)).

14      In determining whether a settlement should be approved, the Ninth Circuit has

15  a strong policy that favors settlement, "particularly where complex class action

16  litigation is concerned." In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir.

17  2008) (citing Class Plaintiffs, 955 F.2d at 1276). The Ninth Circuit favors deference

18  to the "private consensual decision of the [settling] parties," particularly where the

19  parties are represented by experienced counsel and negotiation has been facilitated by

20  a neutral party, in this instance, a magistrate judge. See Rodriguez v. West Publ'g

21  Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and

22  district judges naturally arrive at a reasonable range for settlement by considering the

23  likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of

24  obtaining it, discounted to present value." Id.

25  ///

26  ///

27  ///

28  ///

1    **A.    The Strength of Plaintiff's Case, the Risk, Expense, and Likely**
2         **Duration of Further Litigation, and the Risk of Maintaining Class**
3         **Action Status Throughout the Trial**

4         Both parties have expended have already expended time, effort, and resources
5    supporting their positions, and would continue to do so if the settlement failed to
6    receive approval. (See Doc. No. 27 at 14-16; Rott Decl. ¶ 11.) Both parties have
7    articulated theories of potential claims and defenses, demonstrating that they
8    considered the uncertainty and risk of the outcome of future litigation. (Doc. No. 27 at
9    14-16.) These considerations led the parties to conclude that a timely settlement would
10   be best for all involved parties. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234,
11   1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and
12   avoidance of wasteful and expensive litigation that induce consensual settlement.").
13   The Court agrees that the recovery through settlement confers a substantial and
14   immediate benefit to the class that outweighs the potential recovery that could have
15   been obtained through full litigation.

16        **B.    The Amount Offered in Settlement**

17        In the present case, the proposed settlement provides class members with
18   immediate relief in the form of vouchers for $33.00, $23.00, or $7.00 good towards
19   purchase of alternative Philips products. The Court concludes this settlement is a good
20   result for the class. The $23 and $33 vouchers for class members who can provide
21   proof of purchase represent roughly 25% of the original price those class members paid
22   for the AirFloss. (Doc. No. 27 at 18.) Class members who cannot prove they purchased
23   an AirFloss receive $7 vouchers, even though they would likely receive nothing if this
24   case went to trial. (Id.)

25        Moreover, the Settlement Amount is the result of arm's-length negotiation
26   conducted by experienced counsel. "[P]arties, counsel, mediators, and district judges
27   naturally arrive at a reasonable range for settlements by considering the likelihood of
28   a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it,

discounted to present value." <u>Rodriguez</u>, 563 F.3d at 965. Accordingly, the Court determines the amount offered in settlement weighs in favor of granting final approval of the settlement.

### C.     The Extent of Discovery Completed and the Stage of Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." <u>Linney</u>, 151 F.3d at 1239 (quoting <u>In re Chicken Antitrust Litig.</u>, 669 F.2d 228, 241 (5th Cir. 1982)).

The proposed settlement is the result of extensive settlement negotiations between counsel on both sides with extensive experience in class action litigation. (Doc. No. 27 at 17; Rott Decl. ¶ 26.) Plaintiff's counsel reviewed public documents published by Philips and conducted their own research regarding the AirFloss with dentists and class members. (Doc. No. 27 at 17.) Thus, at the time settlement was reached, Plaintiff's counsel felt they had a clear view on the strengths and weaknesses of their cases. (<u>Id.</u>) Accordingly, the Court determines that the parties investigation and subsequent settlement discussions weigh in favor of granting final approval.

### D.     The Experience and Views of Counsel

Plaintiff's counsel has experience acting as class counsel in complex class action cases, including class actions concerning deceptive advertising. (Rott Decl. ¶ 26.) Class counsel recommends the settlement as both fair and adequate; thus this factor weighs in favor of granting final approval.

### E.     The Reaction of the Class Members to the Proposed Settlement

As of October 20, 2013, 724 claims have been made by class members. (Doc. No. 34 at 8-9.) Only four class members have requested exclusion, and no class member has filed an objection. (<u>Id.</u>) The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement. <u>See</u> <u>Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support

for final approval of the Proposed Settlement."); <u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); <u>Boyd v. Bechtel Corp.</u>, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding persuasive the fact that 84% of the class had filed no opposition). Accordingly, the overall reaction of the class members weighs in favor of granting final approval.

### F.    No Evidence of Collusion

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. <u>Staton</u>, 327 F.3d at 960. In the present case, there is no evidence of collusion.

The $750 incentive award for Plaintiff Perkins does not appear to be the result of collusion. The Court evaluates incentive awards using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." <u>Staton</u>, 327 F.3d at 977 (quoting <u>Cook v. Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998)). In this action, Plaintiff has protected the interests of the class by providing documents to counsel for investigation, attending the mediation session, and assisting counsel with other aspects of the case. (Rott Decl. ¶ 28.) Therefore, the $750 service award to Plaintiff appears to be reasonable in light of her efforts in this litigation.

The attorneys' fees do not appear to be the result of collusion. In fact, Defendants' counsel and Plaintiff's counsel have filed additional statements of clarification regarding the issue of fees, further analyzing the fees in the settlement agreement. (Doc. Nos. 31, 34.) Thus, the award of attorneys' fees does not appear to be the result of any conclusion.

Accordingly, the Court determines that the settlement in this case is "fair, reasonable, and adequate" and grants Plaintiff's motion for final approval of the

1  settlement. Fed. R. Civ. P. 23(e)(2); <u>Staton</u>, 327 F.3d at 959.

2  **III.    Attorneys' Fees and Costs for Class Counsel**

3        Pursuant to the terms of the settlement agreement "Class Counsel agrees to
4  make, and Philips agrees not to oppose, an application for the award of Attorneys' Fees
5  and Expenses in this Action not to exceed a total of $114,500." (Doc. No. 28-2 ¶ I.)
6  At this time, Plaintiff's counsel has motioned for an immediate award of attorneys' fees
7  in the amount of $43,266.84 and reimbursement of expenses in the amount of $485.50.
8  (Doc. No. 28 at 30; Doc. No. 28-1 ¶ 27.) Plaintiff's counsel further requests that the
9  Court retain jurisdiction over the remainder of Plaintiff's counsel's fee, to be
10  determined after class members have submitted claims. (Doc. No. 28 at 30.)[1]

11        Because the interests of class members and class counsel often diverge, the court
12  must remain alert to the possibility that class counsel will "urge a class settlement at
13  a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on
14  fees." <u>Weinberger v. Great N. Nekoosa Corp.</u>, 925 F.2d 518, 524 (1st Cir.1991); <u>In re
15  Bluetooth Headset Products Liab. Litig.</u>, 654 F.3d 935, 947 (9th Cir. 2011). The Ninth
16  Circuit has identified a number of relevant factors to determine if an award of
17  attorneys' fees is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the
18  skill required and the quality of work; (4) the contingent nature of the fee; (5) the
19  burdens carried by class counsel; and (6) the awards made in similar cases. <u>See
20  Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

21        The Court concludes that the requested immediate attorneys' fee award of
22  $43,266.84 is reasonable. Plaintiff's counsel dedicated 137.93 hours to providing non-
23  monetary benefits to the class, for a total lodestar of $74,598. (Doc. No. 28 at 20.) With
24  a 1.16 multiplier, the total adjusted fee for work performed would be $86,533.68. (<u>Id.</u>)
25  But Plaintiff's counsel requests an award of only $43,266.84—50% of the adjusted
26  fee—in consideration of the fact that the work was performed with two goals in mind:

27

28        [1] The last day for class members to submit claims to the claims administrator is January 20,
2014. (Doc. No. 26 at 2.)

1  providing non-monetary benefit to the class by discouraging Philips from continuing

2  their advertising campaign and providing compensation for the class. (Id.)

3      Additionally, Plaintiff's counsel has demonstrated that they incurred expenses

4  in the aggregate amount of $485.50 in recoverable costs and costs "reasonably

5  necessary to conduct the litigation." Cal. Civ. P. Code § 1033.5(c). Class counsel

6  submitted a declaration setting forth the particulars of the expenses and costs incurred.

7  (Rott Decl. ¶ 27.) The Court concludes that $485.50 to be paid by Philips separate from

8  the attorneys' fees and class recovery is reasonable to compensate class counsel for

9  expenses incurred.

10      In sum, the Court concludes that an award of attorneys' fees in the amount of

11  $43,266.84 plus a contingency to be determined once class members have submitted

12  claims, and litigation costs in the amount of $485.50 is reasonable and warranted in this

13  case. Accordingly, the Court grants Plaintiff's request for attorneys' fees and costs, and

14  retains jurisdiction over the remainder of Plaintiff's counsel's fee until the Court holds

15  a hearing regarding contingency fees on the vouchers.

16  **IV.   Service Award for Class Representative**

17      Finally, the $750 service award for Plaintiff Lilia Perkins is also reasonable.

18  "The criteria courts may consider in determining whether to make an incentive award

19  include: 1) the risk to the class representative in commencing suit, both financial and

20  otherwise; 2) the notoriety and personal difficulties encountered by the class

21  representative; 3) the amount of time and effort spent by the class representative; 4) the

22  duration of the litigation and; 5) the personal benefit . . . enjoyed by the class

23  representative as a result of the litigation." Van Vranken v. Atlantic Richfield Co., 901

24  F. Supp. 294, 299 (N.D. Cal. 1995).

25      In the present case, all the above factors weigh in favor of approving the service

26  award requested. This award will not diminish recovery for the Class in any way. (Rott

27  Decl. ¶ 28.) Plaintiff has protected the interests of the class by engaging in

28  investigation, attending a settlement conference, and assisting counsel with other

aspects of the case. (Rott Decl. ¶ 28.) The Ninth Circuit has regularly approved service awards greater than $750. See, e.g., Staton, 327 F.3d at 976 (listing service awards ranging from $2,000 to $5,000). Finally, no class members have objected to Plaintiff's intent to seek a service award of $750. Accordingly, the Court finds the service award to be reasonable and grants Plaintiff's motion for a service award.

## Conclusion

For the reasons stated, the Court:

1.      Reaffirms its prior order certifying the class and appointing class counsel and class representative. (Doc. No. 24.)

2.      The Court reaffirms the following certified Settlement Class:

[A]ll California residents who purchased a new AirFloss in California between January 1, 2011 and June 24, 2013. Excluded from the Settlement Class are: (1) any Person that has already obtained any refund from Philips or any retailer in connection with the AirFloss for which the Class Members seek relief in this case, (2) any Person who files a valid, timely Request for Exclusion; (3) any Person who purchased an AirFloss, but gave it away as a gift; and (4) any Judges to whom this Action is assigned and any member of their immediate families.

3.      The Court concludes that the class notice fully satisfied the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and all due process requirements.

4.      The Court finally approves the settlement as set forth in the Settlement Agreement, pursuant to Rule 23 of the Federal Rules of Civil Procedure and all applicable state laws. The Court directs the parties and the Settlement Administrator to perform in accordance with the terms set forth in the Settlement Agreement.

5.      The Court grants the request for an award of attorneys' fees and costs and awards Class Counsel immediate attorneys' fees in the amount of $43,266.84 and retains jurisdiction over the determination of the remainder of the Class Counsel's fee, to be determined at a hearing on **Tuesday, February 18, 2014 at 10:30 a.m.** On or before **Tuesday, January 21, 2014**, Class Counsel must file a motion for contingency fees. On or before **Tuesday, February 4, 2014**, Defendants may file an opposition to

1  Class Counsel's motion. On or before **Tuesday, February 11, 2014**, Class Counsel
2  may file a reply.

3        The Court awards litigation costs in the amount of $485.50, to be paid according
4  to the terms of the Settlement Agreement and any further orders from the Court.

5        6.      The Court grants the request for a service award of $750 to Plaintiff Lilia
6  Perkins for her service on behalf of the Settlement Class.

7        7.      This Order is not to be construed or used as an admission, concession, or
8  declaration by or against Defendants of any finding of fault, wrongdoing, or liability.

9        8.      The Court enters judgment dismissing with prejudice all claims asserted
10  by Representative Plaintiff and the Class members in this Action.

11        9.      The Court retains jurisdiction over this action for the purposes of
12  supervising the implementation of the Settlement Agreement and determining the
13  remaining attorneys' fees, if any.

14        **IT IS SO ORDERED.**

15  DATED: November 6, 2013

16

17  _____
    MARILYN L. HUFF, District Judge
    UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24

25

26

27

28